X COPY

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2017 MAR -9 PM 2: 29

N. MIYATA
CLERK

**SMITH | LAW**
P. KYLE SMITH                    9533
970 N. Kalaheo, Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE              5857-0
MALIA R. NICKISON-BEAZLEY   9289-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys for Plaintiffs*

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| William and Keri Pye, Brian and Jacqueline Seidl, Alvaro and Bryanne Salazar, Tremayne and Lela Graf, Tulsa and Benjamin Kirk, Michael and Toni Seward, Cory and April Lentowski, William and Elizabeth Law, Jaime Murphy, Matthew and Deborah Edens, Nathan and Jerrica Malsam,<br><br>Plaintiffs,<br><br>Vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc.; and DOE Defendants 1-10,<br>Defendants. | CIVIL NO.: **17-1-0407-03-B I A**<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

EXHIBIT 1

Plaintiffs allege the following against Ohana Military Communities, LLC and Forest City Residential Management, Inc.:

## I.

## JURISDICTION AND VENUE

1)   This Court has jurisdiction and venue over the above Defendants under Hawaii Revised Statutes § 634-35, because the causes of action arise as the result of Defendants' business transactions within this state, Defendants' commission of alleged tortious acts and injuries within this state, and the Defendants' and Plaintiffs' use and possession of real property within this state. Defendants are subject to the jurisdiction of this Court because they reside and conduct business in this Circuit.

2)   Further, this Court has jurisdiction and venue under the terms of Defendants' lease agreements with Plaintiffs, which agree that Lease and contractual relationship between the parties will be construed exclusively in accordance with, and shall be exclusively governed by the substantive laws of the State of Hawaii, including but not limited to Hawaii State Revised Statutes, chapter 521, and the common law interpreting those statutes.

3)   This Court has subject matter jurisdiction over this action under Hawai`i Revised Statute § 603-21.5.

4)   Venue is proper before this Court under Hawai`i Revised Statute § 603-36.

## II.

## PARTIES

5)   Plaintiffs are military families who leased residential housing at Marine Corp Base Hawaii (MCBH) in Kaneohe, Oahu, after 2006 from Defendants.

SMITH | LAW
Revere & Associates

EXHIBIT 1

6)    William and Keri Pye are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from approximately March of 2013 through May of 2016.

7)    Alvaro and Bryanne Salazar are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from approximately June 2007 to July 2010.

8)    Brian and Jacqueline Seidl are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from approximately January of 2007 through December of 2009.

9)    Tremayne and Lela Graf are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where have resided from approximately March 2012 through March 2016.

10)    Tulsa and Benjamin Kirk are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where have resided from approximately July 2012 through November 2016.

11)    Michael and Toni Seward are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from approximately November 2009 through February 2013.

12)    Cory and April Lentowski are current tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from July 2007 through June 2010, and then again from August 2014 through the present.

13)    William and Elizabeth Law are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where have resided from approximately August 2013 through July 2014.

14)    Jaime Murphy is a former tenants of Ohana Military Communities in Kaneohe, Hawaii, where she resided from 2010 to 2013.

15)    Matthew and Deborah Edens are former tenants of Ohana Military Communities in Kaneohe, Hawaii, where they resided from approximately March of 2009 through April of 2012.

SMITH | LAW
Revere & Associates

EXHIBIT 1

16) Nathan and Jerrica Malsam are current tenants of Ohana Military Communities in

Kaneohe, Hawaii, where they have resided from August 2014 through the present.

17) Upon information and belief, Defendant Ohana Military Communities, LCC ("Ohana

MC") is and has been at all relevant times a Hawaii corporation, having its principal place

of business in the City and County of Honolulu, State of Hawaii.

18) Upon information and belief, Defendant Forest City Residential Management, Inc.,

("Forest City RM") is and has been at all relevant times a foreign corporation doing

business in Hawaii and having its principal place of business in Cleveland, Ohio.

19) Plaintiffs allege that Ohana MC and Forest City RM are joint tortfeasors, co-conspirators,

alter egos, agents of the other, co-venturers, and engaged in the joint-enterprise of

developing privatized military housing at MCBH, marketing and sales of residential leases,

sales of renter's insurance policies, providing property management and maintenance

services, as well as the conduct and acts alleged herein.

20) Plaintiffs have reviewed records that were made available to them in order to ascertain the

true and full names and identities of all defendants in this action, but no further knowledge

or information regarding the parties responsible is available at this time and Plaintiffs are

unable to ascertain the identity of the defendants in this action designated as DOE

DEFENDANTS 1-10 ("Doe Defendants"). Doe Defendants are sued herein under fictitious

names for the reason that their true names and identities are unknown to Plaintiffs except

that they may be connected in some manner with Defendants and may be agents, attorneys,

servants, employees, employers, representatives, co-venturers, co-conspirators, associates,

or independent contractors of Defendants and/or were in some manner responsible for the

4

EXHIBIT 1

injuries or damages to Plaintiff and their true names, identities, capacities, activities and responsibilities are presently unknown to Plaintiff or their attorneys.

## III.

## FACTUAL ALLEGATIONS

### *Military Housing Privatization Initiative*

21) In 1996, under the provisions of the Military Housing Privatization Initiative (MHPI), the United States Congress authorized legislation to privatize military housing whereby private companies were allowed to own and manage housing on military bases.

    a.  The MHPI seeks to attract private sector financing, expertise, and innovation to provide necessary housing faster and more efficiently than traditional military housing construction procedures allow;

    b.  Private developers who are selected in a competitive process to own, maintain and operate on-base family housing via a fifty year ground lease.

    c.  The MHPI does not guarantee that service members will elect to live in on-base, privatized housing created under the MHPI.

    d.  Private developers and property managers are instead encouraged to "build/renovate housing units where service members will chose to live."[1]

    e.  Uniformed service members who do not receive government housing are provided with a Basic Allowance for Housing (BAH) and can spend their BAH to purchase private housing either "off-base" or "on-base," which means that developers, real

---

[1] Military Housing Privatization, FAQs, Office of the Deputy Undersecretary of Defense Installations and Environment, http://www.acq.osd.mil/housing/faqs.htm#2.

SMITH | LAW
Revere & Associates

EXHIBIT 1

estate agents, property lessors and property managers compete to acquire service members' BAH dollars.

    f.   On-base privatized housing expressly targets junior enlisted personnel who frequently cannot afford privatized housing within a reasonable commuting distance of base.[2]

22)  Ohana Military Communities, LLC ("Ohana MC") was created to renovate and construct new housing at Marine Corp Base Hawaii ("MCBH").

23)  Forest City Residential Management, Inc. ("Forest City RM") acts as Ohana MC's agent for the lease of residential housing to military families on MCBH during all relevant times and is authorized to manage residential housing at MCBH on Ohana's behalf under the terms of Ohana's lease with military families.[3]

    a.   Forest City RM relies upon and employs licensed Hawaii real estate agents to sell its properties to potential MCBH tenants.

    b.   Ohana MC, by and through its agent Forest City RM, provides services to military families at MCBH related to the marketing, sale, and management of residential leases, sale of renter's insurance policies, and provision of property management and maintenance programs.

    c.   Ohana MC, by and through its agent Forest City RM, markets and advertises its residential leases, rental insurance, and property management and maintenance services at MCBH.

---

[2] *Id.*

[3] Ohana MC Exemplar Lease Agreement at 2, ¶1 ("The Premises are managed by Forest City Residential Management, Inc. ('Agent')....Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner.").

SMITH | LAW
Revere & Associates

EXHIBIT 1

d.  Services provided by Defendants include renter's insurance policy; water; sewer; trash removal services; electricity; maintenance and repair of premises, including but not limited to cleaning services, decorating services, plumbing services, electrical services, HVAC maintenance, service of appliances, carpentry services, storm water maintenance, and grounds care; participation in the Deployed Dependent Program which assists families of deployed service members by providing services such as assistance with backyard yard maintenance, toy and furniture assembly and support peer groups; participation in the Family Leave Program in which service members and their families who are away for more than fourteen consecutive days can receive backyard lawn maintenance, weekly preventative home visits to determine no emergency situations have occurred and postal forwarding services; access to Community Centers for social events, classes, neighborhood projects and events[4]; access to sport and recreation facilities; lawn fertilization and herbicide application services; and, handling of security concerns.

24)  After Defendants took control of military housing at MCBH in approximately 2006, Defendants have subsequently entered several thousand leases with military families for residential housing at MCBH to benefit military families.

25)  Plaintiffs are present and former residents and occupants who leased residential housing at MCBH after 2006 from Ohana MC.

26)  Under the terms of their leases, Ohana MC, Forest City RM, and tenants agree:

---

[4] Forest City Residential Community Handbook for Marine Corps Neighborhoods, at 8.

7

a.  Military families will pay monthly rent equal to their Basic Allowance for Military Housing ("BAH");[5]

b.  Ohana MC will provide safe and habitable housing;[6] and

c.  To mediate any disputes or claim between them arising out of this Lease.[7]

27)  After assuming control of MCBH residential housing, Ohana MC began to lease newly and previously constructed residential housing to military families in approximately 2006. Upon information and belief, older residential housing at MCBH contained asbestos, lead-based paint, extensive mold infestation, and other toxins. During this time Ohana MC began demolishing portions of the older residential housing to build new residential units for future lease, which has occurred at MCBH from approximately 2006 to the present.

28)  Before taking control of MCBH housing, Defendants were warned by Metcalf Construction, which was the contractor originally hired by the Department of the Navy to carry out demolition and construction of military housing at MCBH, that MCBH soils had been found that were contaminated with pesticides including chlordane, heptachlor, and heptachlor epoxide, and that all contaminated topsoil should be removed in addition to other measures.[8]

---

[5] Ohana MC Exemplar Lease Agreement at 2, ¶3 ("Resident agrees to pay monthly Rent equal to the Basic Allowance for Military Housing at the 'with dependent' rate (the 'BAH') at the Resident's duty station of the pay grade of the Resident service member."). Note that assignment to privatized housing is voluntary. In other words, service members have the ability to use their BAH as they see fit; i.e. rent in the civilian market or purchase real estate in the civilian market. BAH is also increased for military service members with families in order to pay for housing for military families.

[6] *Id.* at 5, ¶12 ("Owner is responsible … **for ensuring that the Premises are safe and habitable**.") (emphasis added).

[7] *Id.* at 10, ¶34.

[8] Chlordane was banned by the EPA in 1988 and is classified as a Group B2 carcinogen by the EPA. Similarly, heptachlor was banned by the EPA in 1974 and is listed as a Group B2 carcinogen.

8

EXHIBIT 1

29) Thus, *before* taking over MCBH residential housing, Defendants were aware that chlordane and other pesticide levels were many times higher than the EPA's Tier 1 environmental action levels ("EAL") and that chemical contamination at MCBH housing was widespread and needed to remediated because of the increased health risks for military families at MCBH.

30) Despite these warnings, Defendants did not disclose the presence of pesticide-contaminated soils to military families before marketing and selling residential leases, renter's insurance, and property management and maintenance services at MCBH.

31) After learning of the presence of pesticide-contaminated soils, Ohana MC investigated, conducted additional testing, and thereafter *confirmed* the presence of pervasive pesticide contamination at MCBH.

32) Because of consistent positive test results from MCBH neighborhoods, Ohana MC stopped testing and concluded that *all neighborhoods at MCBH* should be assumed to contain pesticide impacted soils beneath all existing foundations and all surrounding perimeters.

33) In addition to heptachlor, chlordane, and heptachlor epoxide levels in excess of EPA Tier 1 and Tier 2 EALs, Defendants were also aware of chemical contamination for aldrin, dieldrin, and endrin at MCBH in excess of Tier 1 and Tier 2 EALs, similarly failed to provide warning of dangers associated with these risks to military families.

34) After learning of the presence of pesticide-contaminated soils at MCBH, Defendants created a Pesticide Soils Management Plan (the "Plan") with input from the Hawaii Department of Health (HDOH).

   a. Under the Plan, Tier 2 EALs were developed for the pesticides at issue that allowed soil contamination levels above the Tier 1 EALs. These higher levels are justified based

9

Smith | Law
Revere & Associates

EXHIBIT 1

on the flawed assumption that military families would not live at MCBH longer than 6 years (i.e. two 3-year tours of duty at MCBH).

   b. Importantly, these higher Tier 2 EALs mean that military families are exposed to higher excess cancer/non-cancer risks of at least "one in one-hundred thousand" (10-5) rather than the regular Tier 1 level of less than a "one-in-a-million" excess risk.

35) Further, the Plan:

   a. Confirmed the presence of pesticide-contaminated soils at MCBH;

   b. Assumed all neighborhoods contained pesticide-contaminated soils beneath all existing home foundations and surrounding perimeters;

   c. Recommended specific remediation practices to address pesticide contaminated soils such as confirming that "no visible dust" should occur during demolition and construction because of the danger of pesticide-contaminated soils;

   d. Claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH detailing where pesticide-contaminated soils had been found and addressed; and

   e. Confirmed that written notification would be provided to residents anywhere they may contact pesticide-contaminated soils.

36) In spite of specific knowledge of chemical contamination of MCBH residential housing at levels many times above both Tier 1 and Tier 2 EALs, Defendants took over existing leases and entered new leases with military families _without_ disclosure to these families that pesticide-contaminated soils had been tested _and confirmed_ at MCBH.

37) Defendants also did not inform military families at MCBH of the Plan, did not tell military families that Defendants had agreed to accept pesticide-contaminated soils above Tier 1

SMITH | LAW
Revere & Associates

EXHIBIT 1

EALs at MCBH, did not inform military families that pesticide contaminated soils above Tier 2 EAL levels had been confirmed at MCBH, and did not inform military families that pesticide contaminated soils at MCBH would pose a higher excess risk of cancer and non-cancer outcomes for military families residing at MCBH.

38)   Defendants also failed to follow their own Plan. For example:

    a.   Rather than notifying residents that pesticide-contaminated soils had been confirmed at MCBH, Defendants' Residential Community Handbook for Marine Corps Neighborhoods ("Community Handbook") – which was provided to residents *after* they entered leases with Defendants and incorporated within the Lease[9] --contained only a non-specific reference that chlordane and other pesticides "may be found" throughout the United States while expressly representing it is safe for families to work, play, and garden in their yards:

> *Chlordane was one of the most common pesticides applied to the soil around homes and businesses throughout the United States for protection against termites from 1948 to 1988. Other pesticides used in and around housing to prevent insect infestation and disease outbreak have also been banned. Although chlordane and other pesticides are no longer used, they may be found in soils under and around housing constructed in both civilian and military communities. Families can safely work and play in their yards; however, we recommend residents use prudent practices by thoroughly washing their hands after direct soil contact and washing all plants and vegetables grown on-site before consuming.[10]*

    b.   Similarly, while the Plan mandated that "no visible dust" should occur, substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the

---

[9] Ohana MC Exemplar Lease Agreement at 4, ¶11 ("A. Resident agrees to comply with the Community Handbook delivered to Resident…B. Resident has been provided with and acknowledges receipt of a copy of the Community Handbook, which may be updated from time to time.").

[10] Forest City Residential Community Handbook Marine Corps Neighborhoods, at 14.

SMITH | LAW
Revere & Associates

EXHIBIT 1

construction of new housing. When military families repeatedly complained about the excessive dust, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH. Instead, Defendants told military families there was no danger.

c. And while the Plan claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH that detailed where pesticide-contaminated soils had been found and addressed, such maps were not provided until complaints were ultimately brought by Plaintiffs.

39) Since at least 2006, Defendants have systematically failed to warn military families of pesticide contamination at MCBH and knowingly and intentionally exposed military families at MCBH to unsafe conditions including higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such risks.

40) After military families discovered Defendants' failure to disclose the presence of pesticide-contaminated soils, Plaintiffs requested Defendants to mediate with them to address concerns about pesticide-contaminated soils at MCBH under the terms of their lease. The lease mediation provision states:

**Mediation.** Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Handbook. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding.[11]

---

[11] *See* Ohana MC Lease Agreement.

Sᴍɪᴛʜ | Lᴀᴡ
Revere & Associates

EXHIBIT 1

41)   Specifically, Plaintiffs demanded for Ohana MC to participate in mediation pursuant to the mediation clause found within their lease agreements with Ohana MC to address Ohana MC's intentional failure to disclose chemical contamination at MCBH and Ohana MC's failure to provide safe and habitable housing to military families from 2005 to the present.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Ohana MC)

42)   Plaintiffs repeat and incorporate all factual allegations within their Complaint.

43)   Valid contracts were entered between Plaintiffs and Ohana MC for the lease of residential housing on MCBH.

   a.   Under its lease documents, Ohana MC assumes responsibility to meet the housing needs of military families at MCBH and defines military service members who sign the lease as "Residents" and spouses, children, and parents as "Occupants."

   b.   Only military service members who live with a dependent (spouse, child, or parent) are eligible to lease MCBH family housing from Ohana MC.

   c.   Military families who live at MCBH are therefore intended beneficiaries of the lease agreements entered into between service members and Ohana MC as Ohana MC assumes responsibility to meet the housing needs of military families.

44)   Under the terms of their lease contracts, Plaintiffs agreed to pay rent equal to their BAH in exchange for safe and habitable residential housing for their families and agreed the parties' respective lease obligations and responsibilities would be construed exclusively under the

SMITH | LAW
Revere & Associates

EXHIBIT 1

substantive laws of the State of Hawaii, including, but not limited to, Hawaii Revised

Statutes Chapter 521 and the common law interpreting those statutes.[12]

45) Under the terms of their leases and Hawaii law, Ohana MC has breached its lease agreements

with Plaintiffs.

46) Specifically, Ohana MC failed to:

   a. Disclose the presence, nature, or extent of pesticide-contaminated soils at MCBH;

   b. Provide safe and habitable housing;

   c. Fully implement its Pesticide Soil Management Plan; and

47) Plaintiffs have sustained damages as a result of Ohana MC's breach, which includes the

overpayment for rent, real estate sales commissions, renter's insurance policies, property

management and maintenance services, and emotional distress.

48) Because of Ohana MC's breach of contract, it has been necessary for Plaintiffs to incur

expenses and other special damages in an amount to be proven at trial.

49) Under the terms of their lease, Plaintiffs are entitled as the prevailing party to reasonable

attorneys' fees and costs required to pursue this action.

50) As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been

compelled to resort to litigation and therefore request an award of all consequential damages,

including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts

to be proven at time of trial.

---

[12] Military service members receive additional BAH (and cost of living adjustments) to pay for housing for their dependents. Ohana MC provides housing services for military families at MCBH and requires military service members to pay their full BAH – for both themselves and their dependents – as rent in exchange for the provision of housing services.

14

Smith | Law
Revere & Associates

EXHIBIT 1

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty of Habitability – Ohana MC)

51) Plaintiffs repeat and incorporate all factual allegations within their Complaint.

52) Ohana MC owes a duty to Plaintiffs to provide safe and healthy residential housing for military families.

53) Under the terms of their lease contracts, Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing.

54) Ohana MC breached its duty to provide safe and healthy residential housing.

55) Specifically, Ohana MC failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

56) Because of Ohana MC's breach of the implied warranty of habitability, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

57) Plaintiffs have sustained damages as a result of Ohana MC's breach, which includes the overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, and emotional distress.

58) As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## THIRD CLAIM FOR RELIEF
### (Violation of Hawaii Revised Statute Chapter 521 –

15

EXHIBIT 1

**Landlord Tenant Code –Defendants)**

59)   Plaintiffs repeat and incorporate all factual allegations within their Complaint.

60)   Hawaii Revised Statute §521-10 imposes upon landlords an obligation of good faith in the performance of their obligations under the lease.

61)   Hawaii Revised Statute §521-42(a)(1) obligates Defendants to supply housing that complies with applicable building and housing laws materially affecting health and safety.

62)   Despite their obligation to provide healthy and safe housing to military families,[13] Defendants intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan, which included both pesticide contaminated neighborhoods and construction dust at MCBH.

63)   Defendants therefore violated the Hawaii Landlord Tenant Code and Plaintiffs are entitled to all rights and remedies afforded tenants under Chapter 521, which includes their reasonable attorneys' fees and costs.

64)   Because of Defendants' violation of Chapter 521 of the Hawaii Revised Statutes, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

65)   Plaintiffs have sustained damages as a result of Defendants' breach, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and emotional distress.

---

[13] *See* Hawaii Landlord Tenant Code Handbook, Landlord Obligations, at 15 ("Provide safe and healthy premises as required by law. Section 42(a)(1) and (2)").

Smith | Law
Revere & Associates

EXHIBIT 1

66)    As a proximate and legal result of Defendants' breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.


## FOURTH CLAIM FOR RELIEF
### (Unfair & Deceptive Trade Practices - Defendants)

67)    Plaintiffs repeat and incorporate all factual allegations within their Complaint.

68)    Hawaii Revised Statutes § 480-2(a) provides, in relevant part: "[U]nfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[14]

   a.    The sale of residential leases by licensed real estate agents, the sale of insurance policies, and the sale of property management and maintenance services by professional residential property management companies all constitute "any trade or commerce" within the meaning of Hawaii Revised Statutes chapter 480.

69)    Plaintiffs are "consumers" under Hawaii Revised Statute 480-1 who have purchased goods or services or who have personally invested their resources to lease residential housing from Defendants.[15]

   a.    Hawaii Revised Statutes § 480-1 further clarifies that the term "purchase" or "buy" includes "contract to buy", **"lease", "contract to lease"**, "license" and "contract to license".[16]

---

[14] HAW. REV. STAT. §480-2.

[15] HAW. REV. STAT. § 480-1.

[16] *Id.*

17

   b.  The purchase of "leases" from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes Chapter 480.

   c.  The purchase of renter's insurance policies from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

   d.  The purchase of professional residential property management services falls within conduct regulated by Hawaii Revised Statutes chapter 480.

70) Defendants' conduct in using licensed Hawaii real estate agents to market and sell residential leases, renter's insurance policies, and a wide array of property management and maintenance services – many of which address safety and special needs of military families – at MCBH without disclosing the presence, nature, and extent of pesticide-contamination at MCBH constitutes an unfair or deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential tenants.

   a.  For example, Defendants' practice of expressly representing that Defendants "ensured" MCBH housing was "safe and habitable" and that Defendants would provide "exceptional service" constitutes an unfair or deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential purchasers.[17]

   b.  Similarly, Defendants use of a Community Handbook that failed to disclose the presence and risk of pesticide-contaminated soils at MCBH was an unfair and deceptive trade practice.

---

[17] *See* Community Handbook at 1.

SMITH | LAW
Revere & Associates

EXHIBIT 1

71)   To entice military families to enter leases with Defendants at MCBH, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH and that Defendants had decided to accept pesticide-contaminated soils at MCBH above Tier 1 EALs.

72)   Further, after entering leases with Plaintiffs, Defendants asserted it was safe for families to work and play in their yards although they now admit that children and pets should not be allowed to play in the yards near old house foundations and that families should not grow fruits or vegetables in the yards near old house foundations.

73)   Additionally, despite actual knowledge that pesticide-contaminated soils had been confirmed at MCBH, Defendants only provided a cursory statement that chlordane "may" be found in the United States.

74)   Defendants' unfair or deceptive trade practices had a tendency to mislead Plaintiffs into purchasing residential leases, renter's insurance policies and property management and maintenance services at MCBH.

75)   Because of Defendants' unfair and deceptive trade practices, Plaintiffs have incurred expenses and other special damages in an amount to be proven at trial.

76)   Plaintiffs have sustained damages as a result of Defendants' unfair or deceptive trade practices, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and emotional distress.

77)   As a proximate and legal result of Defendants' unfair and deceptive trade practices, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

SMITH | LAW
Revere & Associates

EXHIBIT 1

# FIFTH CLAIM FOR RELIEF
## (Negligent Failure to Warn – Defendants)

78) Plaintiffs repeat and incorporate all factual allegations within their Complaint.

79) Defendants have an obligation to provide safe and healthy housing for residents and a duty to warn residents of risks.

80) Despite actual knowledge of the presence of pesticide-contaminated soils at MCBH and related health risks, however, Defendants provided no warning to military families and instead intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

   a. Defendants' actions are particularly egregious because they communicated, solicited and bargained with Plaintiffs through licensed real estate agents who are, or should be aware, of the need to disclose all known unsafe and hazardous conditions at properties they market and sell.

81) This failure to warn includes Defendants' knowing violation of the Pesticide Soils Management Plan by failing to provide notification under the Plan, failure to maintain detailed maps identifying the location of pesticide-contaminated soils, and failure to warn that fugitive dust potentially contained pesticide-contaminated soil.

82) Defendants have therefore breached their duty to warn military families at MCBH and Plaintiffs are entitled to all rights and remedies, which incudes their reasonable attorneys fees and costs.

83) Because of Defendants' negligence, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

EXHIBIT 1

SMITH | LAW
Revere & Associates

...ve sustained damages as a result of Defendants' negligence, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and emotional distress.

85)   Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

86)   Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

87)   As a proximate and legal result of Defendants' negligence, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SIXTH CLAIM FOR RELIEF
### (Negligent & Intentional Infliction of Emotional Distress - Defendants)

88)   Plaintiffs repeat and incorporate all factual allegations within their Complaint.

89)   While living at MCBH, Plaintiffs were routinely subjected to construction dust exposure that impacted their quality of life at MCBH.

90)   While living at MCBH, Plaintiffs routinely contacted dirt and soil at MCBH.

91)   Plaintiffs have since learned that MCBH contained wide-spread pesticide contamination.

92)   For example, although Defendants historically told residents it was safe to work and play in their yards, Defendants now recommend that pets and children not be allowed to play in the yard near the foundation of the original homes...that are unmarked.

SMITH | LAW
Revere & Associates

EXHIBIT 1

93) When residents have asked for maps and other information that is supposed to be available to confirm their homes are safe, however, Defendants have been neither willing nor able to make such information available.

94) Despite actual knowledge of pesticide-contaminated soils at MCBH, Defendants provided no warning to military families and intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

95) Defendants' intentional, negligent and/or reckless conduct, acts, and omissions have caused emotional distress by causing fear of exposure to harmful pesticides.

96) Plaintiffs have further sustained damages as a result of Defendants' conduct and missions, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

97) Plaintiffs are entitled to all rights and remedies, which incudes their reasonable attorneys fees and costs.

98) Because of Defendants' conduct and omissions, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

99) As a proximate and legal result of Defendants' acts and omissions, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SEVENTH CLAIM FOR RELIEF
### (Fraud by Omission & Express Statement - Defendants)

SMITH | LAW
Revere & Associates



incorporate all factual allegations within this Complaint.

pressly represents that the housing it provides is "safe and habitable" for families within its leases to military families.

1. Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[18] All statements and representations made by Forest City RM are equally on behalf of Ohana MC because such statements are made under the scope of Forest City RM's agency in managing residential housing at MCBH.

106) Forest City RM's Community Handbook is incorporated into all lease agreements and has been provided to *every* military family from approx. 2006 to the present leasing residential housing at MCBH with Ohana MC. The Community Handbook expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[19]

107) Despite these representations, Defendants intentionally and knowingly omitted telling military families that pesticide-contaminated soils had been *confirmed* at MCBH. Instead, the Community Handbook only states that chlordane "may" be found.

108) Despite these representations, Defendants intentionally and knowingly omitted telling military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

---

[18] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable."); *see also* ¶1 (Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner and to give an accept notices.")

[19] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

23

109) Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

110) Despite their ongoing representations in the MCBH Community Handbook, Forest City RM, on behalf of itself and Ohana MC, admitted in Spring 2014 that children and pets should not be allowed to play in their yards and that families should not grow fruits or vegetables in their yards if near the foundation of the pre-existing housing, which directly contradicts the representations of the Community Handbook.

111) Ohana FC and Forest City RM have therefore committed fraud by omission against military families by claiming they provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils pose increased health risks for military families.

112) Ohana FC and Forest City RM have also committed fraud by express statement by telling all military families in their leases that it is safe for families to work, play, and grow gardens in their yards when this was not true.

113) Forest City RM directly participated in fraud against military families because it has been aware that pesticide-contaminated soils were confirmed at MCBH, but repeatedly represented within its Community Handbook that families can safely work and play in their yards as well as grow gardens despite knowledge to the contrary. Similarly, despite actual knowledge that pesticide-contaminated soils were confirmed at MCBH, Forest City RM only states in its Community Handbook that chlordane "may" be found.

114) Because it controls the Community Handbook, Forest City RM has repeatedly and specifically authorized express misrepresentations to be made to military families and is

SMITH | LAW
Revere & Associates

EXHIBIT 1

directly responsible for the content of its fraudulent representations to military families at MCBH. Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the representations of Forest City RM.

115) Plaintiffs have sustained damages as a result of Defendants' fraudulent acts and omissions, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and future medical monitoring of their health and the health of their family members.

116) Defendants' fraudulent conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

117) Defendants' fraudulent acts and omissions therefore justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

118) Because of Defendants' fraudulent acts and omissions, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

119) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.


## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation by Omission & Express Statement- Defendants)

120) Plaintiffs repeat and incorporate all factual allegations within their Complaint.

121) Per the terms of its residential lease with military families at MCBH, Ohana MC represents that it will provide safe and habitable housing for military families.


25

EXHIBIT 1

122) Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[20] All statements and representations made by Forest City RM are therefore equally on behalf of Ohana MC to the extent such statements are made under the scope of Forest City RM's agency.

123) Forest City RM's Community Handbook, which is incorporated into all lease agreements by Ohana MC and has been provided to *every* military family from approx. 2006 to the present who has leased residential housing at MCBH, expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[21]

124) Despite these representations, Ohana MC and Forest City have negligently failed to inform military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

125) Despite these representations, Ohana MC and Forest City have negligently omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

126) Despite these representations, Ohana MC and Forest City now acknowledge that gardens should not be grown and children and pets should not be allowed to play in their yards near the foundation of the pre-existing housing.

---

[20] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable."); *see also* ¶1 (Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner and to give an accept notices.")

[21] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

Smith | Law
Revere & Associates

EXHIBIT 1

127) Despite knowledge that pesticide contaminated soils had been *confirmed* at MCBH, Defendants' Community Handbook instead only states that chlordane "may" be found.

128) Defendants' claim that they would provide safe housing within their leases and that it is safe to work, play, and use their yards while omitting that pesticide-contaminated soils were confirmed at MCBH and that such soils pose increased health risks for military families are negligent misrepresentations to Plaintiffs.

129) Ohana FC and Forest City RM have jointly participated in, approved, and directed this tortious conduct and representations against military families.

130) Forest City RM drafts and controls the Community Handbook as well as controls and directs virtually all representations to military families. Although Forest City RM possessed knowledge that pesticide-contaminated soils had been confirmed at MCBH, Forest City RM's Community Handbook failed to disclose this fact and instead represented that families can safely work, play and use their yards. Forest City RM has therefore repeatedly participated in and authorized misrepresentations to military families and is directly responsible for its misrepresentations to military families at MCBH.

131) Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the conduct and representations of Forest City RM as well as its own representations within its lease agreements.

132) Plaintiffs have sustained damages as a result of Defendants' negligent acts and omissions, which includes, but is not limited to, the overpayment for rent, real estate sales commissions, property management and maintenance services and for emotional distress.

133) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

27

134) Defendants' acts and omissions justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

135) Because of Defendants' acts and omissions, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

136) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## NINTH CLAIM FOR RELIEF
### (Unfair Competition– Defendants)

137) Plaintiffs repeat and incorporate all factual allegations within their Complaint.

138) Hawaii Revised Statutes § 480-2(a) provides, in relevant part: "Unfair methods of competition … in the conduct of any trade or commerce are unlawful."[22]

139) The sale of residential leases by licensed real estate agents, the sale of insurance policies, and the sale of property management and maintenance services by professional residential property management companies all constitute "any trade or commerce" within the meaning of Hawaii Revised Statutes chapter 480.

140) Plaintiffs are "any person(s)" who have been "injured in the person's business or property by reason of anything forbidden or declared unlawful by [HRS] chapter [480]," pursuant to Hawaii Revised Statutes § 480-13(a).

141) Hawaii Revised Statutes § 480-1 defines the term "purchase" or "buy" to include "contract to buy", **"lease", "contract to lease"**, "license" and "contract to license". The purchase of "leases" falls within the conduct regulated by Hawaii Revised Statutes chapter 480.

---

[22] HAW. REV. STAT. §480-2.

SMITH | LAW
Revere & Associates

EXHIBIT 1

a. The purchase of "leases" from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

b. The purchase of renter's insurance policies from licensed real estate agents falls within conduct regulated by Hawaii Revised Statutes chapter 480.

c. The purchase of professional residential property management services falls within conduct regulated by Hawaii Revised Statutes chapter 480.

142) By failing to provide notice to Plaintiffs about the existence, nature and extent of pesticide contamination at MCBH, Defendants engaged in unfair competition and enjoyed a competitive advantage over other real estate agents, private landlords, property management service providers, and insurance providers in the area who were competing for BAH dollars.

143) Plaintiffs have sustained damages as a result of Defendants' unfair competition, which includes the overpayment for rent, real estate sales commissions, property management and maintenance services and future medical monitoring of their health and the health of their family members.

144) As a proximate and legal result of Defendants' unfair competition, members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## TENTH CLAIM FOR RELIEF
### (Trespass)

145) Plaintiffs repeat and incorporate the above paragraphs herein.

SMITH | LAW
Revere & Associates

EXHIBIT 1

146) During the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding community and property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes.

147) Defendants are liable for the trespass of its construction into the community and onto the property of Plaintiffs.

148) Because of the invasion of dust onto Plaintiffs' property, it has been necessary for the Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

149) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations, Defendants failed to take steps to prevent the release of construction dust into the community nor did it provide any adequate and timely warning to Plaintiffs.

150) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

151) As a proximate and legal result of Defendants conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.


## ELEVENTH CLAIM FOR RELIEF
### (Nuisance)

152) Plaintiffs repeat and incorporate the above paragraphs herein.

SMITH | LAW
Revere & Associates

EXHIBIT 1

153) During the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding community and property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes.

154) Defendants' repeated release of construction resulted in harm, inconvenience, and unlawfully annoyed and disturbed the Plaintiffs' free use, possession, and enjoyment of their property.

155) Defendants' construction operations during the relevant time period constituted a nuisance to Plaintiffs.

156) Defendants are therefore liable for damages that are the legal and proximate result of the nuisance created by their conduct.

157) Because of the invasion of dust onto Plaintiffs' property, it has been necessary for the Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

158) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations, Defendants failed to take steps to prevent the release of construction dust into the community nor did it provide any adequate and timely warning to Plaintiffs.

159) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

160) As a proximate and legal result of Defendants' conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

SMITH | LAW
Revere & Associates

EXHIBIT 1

WHEREFORE, Plaintiffs pray for judgment against Defendants and in favor of the Plaintiffs as follows:

1. General, special, treble, and consequential damages in an amount to be proven at trial;

2. Reasonable attorneys' fees and costs;

3. Disgorgement of profits due to Defendants' unjust enrichment;

4. Any prejudgment interest provided by statute;

5. Punitive damages for Defendants' wanton, reckless, and grossly negligent conduct;

6. For such other and further relief at law or equity as the Court may deem just and proper.

Dated: Honolulu, Hawai`i, this 9th day of March, 2017,

P. Kyle Smith
Terrance M. Revere
*Attorneys for Plaintiffs*

SMITH | LAW
Revere & Associates

EXHIBIT 1