**SMITH | LAW**
P. KYLE SMITH          9533
970 N. Kalaheo, Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE     5857
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| William and Keri Pye, Brian and Jacqueline Seidl, Alvaro and Bryanne Salazar, Tremayne and Lela Graf, Tulsa and Benjamin Kirk, Michael and Toni Seward, Cory and April Lentowski, William and Elizabeth Law, Jaime Murphy, Matthew and Deborah Edens, Nathan and Jerrica Malsam, <br><br> Plaintiffs, <br><br> vs. <br><br> Ohana Military Communities, LLC, Forest City Residential Management, Inc., and DOE Defendants 1-10, <br><br> Defendants. | Civ. No.  1:17-CV-00114 LEK-KJM <br><br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** <br><br><br><br> No Trial Date Set |

Plaintiffs allege the following against Ohana Military Communities, LLC and Forest City Residential Management, Inc.:

# I.

## JURISDICTION AND VENUE[1]

1) The State Court of Hawaii has jurisdiction and venue over the above Defendants under Hawaii Revised Statutes § 634-35, because the causes of action arise as the result of Defendants' business transactions within this state, Defendants' commission of alleged tortious acts and injuries within this state, and the Defendants' and Plaintiffs' use and possession of real property within this state. Defendants are subject to the jurisdiction of this Court because they reside and conduct business in this Circuit.

2) Further, the State Court of Hawaii has jurisdiction and venue under the terms of Defendants' lease agreements with Plaintiffs, which agree that Lease and contractual relationship between the parties will be construed exclusively in accordance with, and shall be exclusively governed by the substantive laws of the State of Hawaii, including but not limited to Hawaii State Revised Statutes, chapter 521, and the common law interpreting those statutes.

---

[1] Note that this Court has asserted federal enclave jurisdiction and venue over this matter. Plaintiffs' original jurisdiction and venue assertions on behalf of Hawaii state court are included within this Amended Complaint, however, for consistency and to clarify that Plaintiffs intend no waiver of this appellate issue.

SMITH|LAW
REVERE & ASSOCIATES

3) The State Court of Hawaii has subject matter jurisdiction over this action under Hawai`i Revised Statute § 603-21.5.

4) Venue is proper before the State Court of Hawaii under Hawai`i Revised Statute § 603-36.

## II.

## PARTIES

5) Plaintiffs are military families who leased residential family housing at Marine Corp Base Hawaii (MCBH) in Kaneohe, Oahu, after 2006 from Defendants:

   a. William and Keri Pye are former tenants at MCBH from approximately March of 2013 through May of 2016 at 1846 Harris Avenue.

   b. Alvaro and Bryanne Salazar are former tenants at MCBH from approximately a) July 2007 to 2008 at Lawrence Road; b) 2008 to July 2010 at 6282 Gier Street.

   c. Brian and Jacqueline Seidl are former tenants at MCBH from approximately January of 2007 through December of 2009 at 2201 Bauer Drive.

   d. Tremayne and Lela Graf are former at MCBH from approximately May 2012 through March 2016 at Nueku Street.

   e. Tulsa and Benjamin Kirk are former tenants of MCBH from approximately July 2012 through November 2016 at 4048 Hanson Street.

f.  Michael and Toni Seward are former tenants at MCBH from approximately November 2009 through February 2013 at 2742-C Malabey Court.

g.  Cory and April Lentowski are former tenants at MCBH where they resided from approximately a) August 2007 through June 2010 at 1751 Lawrence Drive; b) September 2014 through May 2015 at 4199 Elrod Street; c) May 2015 through June 2017 at 5028 Bauer Drive.

h.  William and Elizabeth Law are former tenants at MCBH from approximately August 2013 through July 2014 at 6551 B Faleafine Place.

i.  Jaime Murphy is a former tenant at MCBH from approximately 2010 to 2013 at 1944 B Parks Avenue, and 1938 Parks Avenue.

j.  Matthew and Deborah Edens are former tenants at MCBH from approximately April of 2009 through April of 2012 at 2065 Anena Street.

k.  Nathan and Jerrica Malsam are former tenants at MCBH from approximately a) August 2014 to September 2015 at 1806 Harris Avenue; b) September 2015 through May 2017 at 9010 Bordelon Loop.

6)  Upon information and belief, Defendant Ohana Military Communities, LCC ("Ohana MC") is and has been at all relevant times a Hawaii corporation, having its principal place of business in the City and County of Honolulu, State of Hawaii.

7)  Upon information and belief, Defendant Forest City Residential Management, Inc., ("Forest City RM") is and has been at all relevant times a foreign corporation

4

doing business in Hawaii and having its principal place of business in Cleveland, Ohio.

8) Plaintiffs allege that Ohana MC and Forest City RM are joint tortfeasors, co-conspirators, alter egos, agents of the other, co-venturers, and engaged in the joint-enterprise of developing privatized military housing at MCBH, marketing and sales of residential leases, sales of renter's insurance policies, providing property management and maintenance services, as well as the conduct and acts alleged herein.

9) Plaintiffs have reviewed records that were made available to them in order to ascertain the true and full names and identities of all defendants in this action, but no further knowledge or information regarding the parties responsible is available at this time and Plaintiffs are unable to ascertain the identity of the defendants in this action designated as DOE DEFENDANTS 1-10 ("Doe Defendants"). Doe Defendants are sued herein under fictitious names for the reason that their true names and identities are unknown to Plaintiffs except that they may be connected in some manner with Defendants and may be agents, attorneys, servants, employees, employers, representatives, co-venturers, co-conspirators, associates, or independent contractors of Defendants and/or were in some manner responsible for the injuries or damages to Plaintiff and their true names, identities,

Smith|Law
Revere & Associates

capacities, activities and responsibilities are presently unknown to Plaintiff or their attorneys.

## III.

## FACTUAL ALLEGATIONS

### *Military Housing Privatization Initiative*

10) In 1996, under the provisions of the Military Housing Privatization Initiative (MHPI), the United States Congress authorized legislation to privatize military housing whereby private companies were allowed to own and manage housing on military bases.

   a. The MHPI seeks to attract private sector financing, expertise, and innovation to provide necessary housing faster and more efficiently than traditional military housing construction procedures allow;

   b. Private developers who are selected in a competitive process to own, maintain and operate on-base family housing via a fifty-year ground lease.

   c. The MHPI does <u>not</u> guarantee that service members will elect to live in on-base, privatized housing created under the MHPI.

   d. Private developers and property managers are instead encouraged to "build/renovate housing units where service members will choose to live."[2]

---

[2] Military Housing Privatization, FAQs, Office of the Deputy Undersecretary of Defense Installations and Environment, http://www.acq.osd.mil/housing/faqs.htm#2.

SMITH|LAW
REVERE & ASSOCIATES

e. Uniformed service members who do not receive government housing are provided with a Basic Allowance for Housing (BAH) and can spend their BAH to purchase private housing either "off-base" or "on-base," which means that developers, real estate agents, property lessors and property managers compete to acquire service members' BAH dollars.

f. On-base privatized housing expressly targets junior enlisted personnel who frequently cannot afford privatized housing within a reasonable commuting distance of base.[3]

11) Ohana Military Communities, LLC ("Ohana MC") was created to renovate and construct new housing at Marine Corp Base Hawaii ("MCBH").

12) Forest City Residential Management, Inc. ("Forest City RM") acts as Ohana MC's agent for the lease of residential housing to military families on MCBH during all relevant times and is authorized to manage residential housing at MCBH on Ohana MC's behalf under the terms of Ohana MC's lease with military families.[4]

a. Forest City RM relies upon and employs licensed Hawaii real estate agents to sell its properties to potential MCBH tenants.

---

[3] *Id.*

[4] Ohana MC Exemplar Lease Agreement at 2, ¶1 ("The Premises are managed by Forest City Residential Management, Inc. ('Agent') …. Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner.").

SMITH|LAW
REVERE & ASSOCIATES

b. Ohana MC, by and through its agent Forest City RM, provides services to military families at MCBH related to the marketing, sale, and management of residential leases, sale of renter's insurance policies, and provision of property management and maintenance programs.

c. Ohana MC, by and through its agent Forest City RM, markets and advertises its residential leases, rental insurance, and property management and maintenance services at MCBH.

d. Services provided by Defendants include renter's insurance policy; water; sewer; trash removal services; electricity; maintenance and repair of premises, including but not limited to cleaning services, decorating services, plumbing services, electrical services, HVAC maintenance, service of appliances, carpentry services, storm water maintenance, and grounds care; participation in the Deployed Dependent Program which assists families of deployed service members by providing services such as assistance with backyard yard maintenance, toy and furniture assembly and support peer groups; participation in the Family Leave Program in which service members and their families who are away for more than fourteen consecutive days can receive backyard lawn maintenance, weekly preventative home visits to determine no emergency situations have occurred and postal forwarding services; access to Community Centers for social events, classes,

neighborhood projects and events[5]; access to sport and recreation facilities; lawn fertilization and herbicide application services; and, handling of security concerns.

13) After Defendants took control of military housing at MCBH in approximately 2006, Defendants subsequently entered several thousand leases with military families for residential housing at MCBH to benefit military families.

14) Plaintiffs are present and former residents and occupants who leased residential housing at MCBH after 2006 from Ohana MC.

15) Under the terms of their leases, Ohana MC, Forest City RM, and tenants agree:

    a. Military families will pay monthly rent equal to their Basic Allowance for Military Housing ("BAH");[6]

    b. Ohana MC will provide safe and habitable housing;[7] and

    c. To mediate any disputes or claim between them arising out of this Lease.[8]

---

[5] Forest City Residential Community Handbook for Marine Corps Neighborhoods, at 8.

[6] Ohana MC Exemplar Lease Agreement at 2, ¶3 ("Resident agrees to pay monthly Rent equal to the Basic Allowance for Military Housing at the 'with dependent' rate (the 'BAH') at the Resident's duty station of the pay grade of the Resident service member."). Note that assignment to privatized housing is voluntary. In other words, service members have the ability to use their BAH as they see fit; i.e. rent in the civilian market or purchase real estate in the civilian market. BAH is also increased for military service members with families in order to pay for housing for military families.

[7] *Id.* at 5, ¶12 ("Owner is responsible … **for ensuring that the Premises are safe and habitable**.") (emphasis added).

[8] *Id.* at 10, ¶34.

16) After assuming control of MCBH residential housing, Ohana MC began to lease newly and previously constructed residential housing to military families in approximately 2006. Upon information and belief, older residential housing at MCBH contained asbestos, lead-based paint, extensive mold infestation, and other toxins. During this time Ohana MC began demolishing portions of the older residential housing to build new residential units for future lease, which has occurred at MCBH from approximately 2006 to the present.

17) <u>Before</u> taking control of MCBH housing, Defendants were warned by Metcalf Construction, which was the contractor originally hired by the Department of the Navy to carry out demolition and construction of military housing at MCBH, that MCBH soils had been found that were contaminated with pesticides including chlordane, heptachlor, and heptachlor epoxide, and that <u>all</u> contaminated topsoil should be removed in addition to other measures.[9]

18) Thus, *before* taking over MCBH residential housing, Defendants were aware that chlordane and other pesticide levels were many times higher than the EPA's Tier 1 environmental action levels ("EAL") and that chemical contamination at MCBH housing was widespread and needed to be remediated because of the increased health risks for military families at MCBH.

---

[9] Chlordane was banned by the EPA in 1988 and is classified as a Group B2 carcinogen by the EPA. Similarly, heptachlor was banned by the EPA in 1974 and is listed as a Group B2 carcinogen.

19) Despite these warnings, Defendants did <u>not</u> disclose the presence of pesticide-contaminated soils to military families before marketing and selling residential leases, renter's insurance, and property management and maintenance services at MCBH.

20) After learning of the presence of pesticide-contaminated soils, Ohana MC investigated, conducted additional testing, and thereafter *confirmed* the presence of pervasive pesticide contamination at MCBH.

21) Because of consistent positive test results from MCBH neighborhoods, Ohana MC stopped testing and concluded that *all neighborhoods at MCBH* should be assumed to contain pesticide impacted soils beneath all existing foundations and all surrounding perimeters.

22) In addition to heptachlor, chlordane, and heptachlor epoxide levels in excess of EPA Tier 1 and Tier 2 EALs, Defendants were also aware of chemical contamination for aldrin, dieldrin, and endrin at MCBH in excess of Tier 1 and Tier 2 EALs, similarly failed to provide warning of dangers associated with these risks to military families.

23) After learning of the presence of pesticide-contaminated soils at MCBH, Defendants created a Pesticide Soils Management Plan (the "Plan") with input from the Hawaii Department of Health (HDOH).[10]

---

[10] *See* February 2008 Pesticide Soil Management Plan.

SMITH|LAW
REVERE & ASSOCIATES

a. Under the Plan, Tier 2 EALs were developed for the pesticides at issue that allowed soil contamination levels above the Tier 1 EALs. These higher levels are justified based on the flawed assumption that military families would not live at MCBH longer than 6 years (i.e. two 3-year tours of duty at MCBH).

b. Importantly, these higher Tier 2 EALs mean that military families are exposed to higher excess cancer/non-cancer risks of at least "one in one-hundred thousand" (10-5) rather than the regular Tier 1 level of less than a "one-in-a-million" excess risk.

c. Additionally, Defendants Plan does <u>not</u> contemplate additional risk increases from exposure to airborne contamination in the form of contaminated soil and dust. Stated different, Defendants exposure assessment is a conservative assessment based solely upon routine ingestion of contaminated soil at MCBH.

24) Further, the Plan:

a. Confirmed the presence of pesticide-contaminated soils at MCBH;

b. Assumed all neighborhoods contained pesticide-contaminated soils beneath all existing home foundations and surrounding perimeters;

c. Recommended specific remediation practices to address pesticide contaminated soils such as confirming that "no visible dust" should occur

SMITH|LAW
REVERE & ASSOCIATES

during demolition and construction because of the danger of pesticide-contaminated soils;

d. Claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH detailing where pesticide-contaminated soils had been found and addressed; and

e. Confirmed that written notification would be provided to residents anywhere they may contact pesticide-contaminated soils.

25) In spite of specific knowledge of chemical contamination of MCBH residential housing at levels many times above both Tier 1 and Tier 2 EALs, Defendants took over existing leases and entered new leases with military families <u>without</u> disclosure to these families that pesticide-contaminated soils had been tested *and confirmed* at MCBH.

26) Defendants also did not inform military families at MCBH of the Plan, did not tell military families that Defendants had agreed to accept pesticide-contaminated soils above Tier 1 EALs at MCBH, did not inform military families that pesticide contaminated soils above Tier 2 EAL levels had been confirmed at MCBH, and did not inform military families that pesticide contaminated soils at MCBH would pose a higher excess risk of cancer and non-cancer outcomes for military families residing at MCBH.

SMITH|LAW
REVERE & ASSOCIATES

27) Defendants also failed to follow their own Plan. For example:

a. Rather than notifying residents that pesticide-contaminated soils had been confirmed at MCBH, Defendants' Residential Community Handbook for Marine Corps Neighborhoods ("Community Handbook") – which was provided to residents *after* they entered leases with Defendants and incorporated within the Lease[11] –contained only a non-specific reference that chlordane and other pesticides "may be found" throughout the United States while expressly representing it is safe for families to work, play, and garden in their yards:

> *Chlordane was one of the most common pesticides applied to the soil around homes and businesses throughout the United States for protection against termites from 1948 to 1988. Other pesticides used in and around housing to prevent insect infestation and disease outbreak have also been banned. Although chlordane and other pesticides are no longer used, they may be found in soils under and around housing constructed in both civilian and military communities. Families can safely work and play in their yards; however, we recommend residents use prudent practices by thoroughly washing their hands after direct soil contact and washing all plants and vegetables grown on-site before consuming.[12]*

b. Similarly, while the Plan mandated that "no visible dust" should occur, substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the construction of new housing. When military families

---

[11] Ohana MC Exemplar Lease Agreement at 4, ¶11 ("A. Resident agrees to comply with the Community Handbook delivered to Resident…B. Resident has been provided with and acknowledges receipt of a copy of the Community Handbook, which may be updated from time to time.").

[12] Forest City Residential Community Handbook Marine Corps Neighborhoods, at 14.

repeatedly complained about the excessive dust, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH. Instead, Defendants told military families there was no danger.

c. And while the Plan claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH that detailed where pesticide-contaminated soils had been found and addressed, such maps were not provided until complaints were ultimately brought by Plaintiffs.

28) Since at least 2006, Defendants have systematically failed to warn military families of pesticide contamination at MCBH and knowingly and intentionally exposed military families at MCBH to unsafe conditions including higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such risks.

29) After military families discovered Defendants' failure to disclose the presence of pesticide-contaminated soils, Plaintiffs requested Defendants to mediate with them to address concerns about pesticide-contaminated soils at MCBH under the terms of their lease. The lease mediation provision states:

**Mediation**. Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Handbook. If, for any dispute or claim to which this paragraph applies, any party commences an action without first

15

attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding.[13]

30) Specifically, Plaintiffs demanded for Ohana MC to participate in mediation pursuant to the mediation clause found within their lease agreements with Ohana MC to address Ohana MC's intentional failure to disclose chemical contamination at MCBH and Ohana MC's failure to provide safe and habitable housing to military families from 2005 to the present.

31) In response, however, Ohana MC made clear that it would not individually mediate with Plaintiffs because of the number of military families who have brought claims against it.

**Individual Experiences and Impact to Plaintiffs and their Families Living at MCBH**

32) While living at MCBH, Plaintiffs and their families routinely visited other neighborhoods at MCBH every day in the course of their normal responsibilities, which included routine travel by foot, bike, and car between MCBH neighborhoods on their way to various destinations (e.g., school, friend's homes, playgrounds, bus stop, MCX, etc.).

33) As part of their daily lives, Plaintiffs lived within and/or visited neighborhoods on a weekly basis that MCBH now admits contained homes and soils contaminated

---

[13] *See* Ohana MC Exemplar Lease Agreement.

Smith|Law
Revere & Associates

by pesticides and other contaminants (asbestos, lead-based paint, extensive mold infestation, and other toxins). Therefore, even when individual Plaintiffs who did not live within "contaminated" neighborhood still visited contaminated neighborhoods and were exposed to construction dust on a regular basis as "clean" homes were cited near to Defendants' alleged remediation efforts.

34) While living at MCBH, Plaintiffs observed and were routinely exposed to dust and dirt from the demolition and construction of homes at MCBH. For example:

    a. The Pye family saw construction blowing from construction areas, dust staining roads and sidewalks, settled on their vehicles, coating the outside of their windows and settled on their outdoor possessions.

    b. The Salazar family saw construction dust on a regular basis from 2007 to 2008. During that time construction was happening all around their home. Dust would settle on their outdoor possessions such as their childrens' trampoline, coat the outside of their windows, and coat the exterior of their home.

    c. The Seidl family experienced construction dust while at MCBH both inside and outside their neighborhood. Every day they saw dust coating the playground equipment, cars, on the streets and coating the exterior of houses and lanais. They stayed indoors and kept the windows closed to try to avoid dust exposure.

d. The Graf family experienced construction dust while at MCBH. Plumes of dust would blow onto the beach areas on base so thickly that Mrs. Graf had to avoid these beaches because of asthma attacks.

e. The Kirk family experienced construction dust while living at MCBH Mondays through Saturdays. They say dust plumes blowing from construction areas both inside and outside their neighborhoods, staining roads and sidewalks, settled on their outside possessions and kids' toys, and caking their screens and outside of their home.

f. The Seward family experienced construction dust throughout the duration of they time at MCBH. Seeing dust blowing from construction areas, settled on their vehicles, lanai and outdoor possessions, caking their window screens and seeping into their home was a daily occurrence.

g. The Lentowski family experienced dust throughout their time at MCBH. Seeing dust blowing from construction areas, dust settled on their vehicles, on their kids' toys, their lanai and coating the exterior of their home was a daily reality. Because the homes the Lentowski family occupied had been built without central AC and no window unites were provided by housing, they had to keep their windows open and their home was inundated with dust.

h. The Law family routinely experienced construction dust on MCBH including dust seeping into their home, covering their window sills and floors.

Smith|Law
Revere & Associates

i. The Murphy family experienced dust at MCBH, especially throughout 2011. During that time they saw dust on a daily basis blowing from constructions areas, coating their lanai, kids' toys, vehicles, the exterior of their home and windows.

j. The Edens family saw construction dust regularly on MCBH. Dust staining roads and sidewalks was a daily occurrence. While living aboard MCBH dust coated the outside of their home, their windows, and seeped inside covering window sills, counters and floors.

k. The Malsam family experienced construction dust the entire time they resided at MCBH. They noticed dust settling on their vehicles, dust settled so thickly on their outside belongings that many of them could not be brought to the mainland.

35) All Plaintiffs' families personally observed construction dust blowing from MCBH construction sites into adjacent neighborhoods and onto their personal persons and property while they traveled by foot, car, or bike around MCBH.

36) All Plaintiffs' families personally experienced construction dust settling on their cars or other possessions on a weekly basis while living at MCBH, which required additional cleaning of the personal and real property.

37) All Plaintiffs' families personally experienced construction dust settling on their windows and/or home exteriors that required substantial additional cleaning.

38) All Plaintiffs' families recall construction dust penetrating into their homes and settling on window sills, counters, floors, etc. that also required additional cleaning.

39) To deal with the dust impacts, families purchased additional cleaning and air filtration supplies (e.g. wet mops, vacuums, air filters, air purifiers, etc.).

40) The constant presence of construction dust prevented Plaintiffs' families from using and enjoying their homes as much as they would have normally, including using their yards/lanais less keeping their windows/doors shut to keep air-conditioning running rather than enjoying the open air. The environmental conditions at MCBH also prevented Plaintiffs from using and enjoying their MCBH community as much as they otherwise should have.

41) At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

42) At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

43) At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

SMITH|LAW
REVERE & ASSOCIATES

44) At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

45) At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

46) Because of Defendants' failure to disclose widespread environmental contamination at MCBH, all Plaintiffs allowed their families and pets to come into contact with dust, dirt, and soils in the yards of homes at MCBH (at their own homes and within contaminated neighborhoods) without taking additional precautions.

47) Had Plaintiffs been told about the presence of widespread pesticide contamination and contaminated construction dust at MCBH they would not have chosen MCBH housing for their family and would have taken additional steps to have protected their family.

48) Had Plaintiffs been told that Ohana MC was engaged in a community-wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH they would not have chosen MCBH housing for their family.

SMITH|LAW
REVERE & ASSOCIATES

49) Had Plaintiffs been told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods at MCBH they would not have chosen MCBH housing for their family.

50) Had Plaintiffs been told that Defendants were exposing Plaintiffs, Plaintiffs' families, and other military families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will they would not have chosen MCBH housing for their family.

51) All Plaintiffs contend they have been overcharged for housing at MCBH because of Defendants' failure to disclose pesticide contamination, failure to control contaminated construction dust at MCBH, and failure to disclose its alleged pesticide "management" plan.

52) All Plaintiffs are extremely concerned, fearful, and worried that they and their families have been exposed to dangerous chemicals and higher rates of adverse health outcomes while living at MCBH for themselves and their families because of Defendants' failure to disclose and failure to protect their families.

53) All Plaintiffs feel that they have not received the MCBH community they were promised by Defendants and that Defendants': a) failure to disclose widespread pesticide contamination at MCBH; b) failure to warn to warn Plaintiffs of the risks they and their families were exposed to; and c) failure to prevent contaminated

22

soils, dust, and dirt from contacting Plaintiffs and their families, have made their Plaintiffs' lives, both while living at MCBH and after, less enjoyable.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Ohana MC)

54) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

55) Valid contracts were entered between Plaintiffs and Ohana MC for the lease of residential housing on MCBH.

    a.  Under its lease documents, Ohana MC assumes responsibility to meet the housing needs of military families at MCBH and defines military service members who sign the lease as "Residents" and spouses, children, and parents as "Occupants."

    b.  Only military service members who live with a dependent (spouse, child, or parent) are eligible to lease MCBH family housing from Ohana MC.

    c.  Military families who live at MCBH are therefore intended beneficiaries of the lease agreements entered into between service members and Ohana MC as Ohana MC assumes responsibility to meet the housing needs of military families.

56) Under the terms of their lease contracts, Plaintiffs agreed to pay rent equal to their BAH in exchange for safe and habitable residential housing at MCBH for their families and agreed the parties' respective lease obligations and responsibilities

would be construed exclusively under the substantive laws of the State of Hawaii, including, but not limited to, Hawaii Revised Statutes Chapter 521 and the common law interpreting those statutes.[14]

57) Under the terms of their leases and Hawaii law, Ohana MC has breached its lease agreements with Plaintiffs.

58) Specifically, Ohana MC failed to:

    a. Disclose the presence, nature, or extent of pesticide-contaminated soils at MCBH;

    b. Provide safe and habitable housing;

    c. Provide a safe and habitable community at MCBH; and

    d. Disclose or fully implement its Pesticide Soil Management Plan;

59) Because of Ohana MC's breach of contract, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

60) Because of Defendants' breach, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

    a. Economic –

---

[14] Military service members receive additional BAH (and cost of living adjustments) to pay for housing for their dependents. Ohana MC provides housing services for military families at MCBH and requires military service members to pay their full BAH – for both themselves and their dependents – as rent in exchange for the provision of housing services.

    i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

    ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

  b. Non-economic –

    i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii. Loss of use and enjoyment in their homes and community;

    iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv. Loss of aesthetic and recreational satisfaction in their community.

61) Under the terms of their lease, Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

62) As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all

SMITH|LAW
REVERE & ASSOCIATES

consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Habitability – Ohana MC)**

63) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

64) Ohana MC owes a duty to Plaintiffs to provide safe and healthy residential housing for military families.

65) Under the terms of their lease contracts, Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing.

66) Ohana MC breached its duty to provide safe and healthy residential housing.

67) As explained above, Ohana MC failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

    a. At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

SMITH|LAW
REVERE & ASSOCIATES

b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

c. At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d. At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

e. At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

68) Instead, Defendants failed to disclose the risks and failed to protect Plaintiffs and their families' health while living at MCBH.

69) Because of Defendants' breach, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

a. Economic–

27

    i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

    ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

    i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii. Loss of use and enjoyment in their homes and community;

    iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv. Loss of aesthetic and recreational satisfaction in their community.

70) As a proximate and legal result of Ohana MC's breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

SMITH|LAW
REVERE & ASSOCIATES

## THIRD CLAIM FOR RELIEF
### (Violation of Hawaii Revised Statute Chapter 521 – Landlord Tenant Code –Defendants)

71) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

72) Hawaii Revised Statute §521-10 imposes upon landlords an obligation of good faith in the performance of their obligations under the lease.

73) Despite their obligation to act in good faith towards military families, Defendants intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan, which included both pesticide contaminated neighborhoods and construction dust at MCBH.

74) As described above, despite their obligation to act in good faith, Defendants failed to disclose and failed to protect Plaintiffs and their families from widespread pesticide contamination at MCBH.

75) Defendants therefore violated the Hawaii Landlord Tenant Code and Plaintiffs are entitled to all rights and remedies afforded tenants under Chapter 521, which includes their reasonable attorneys' fees and costs.

SMITH|LAW
REVERE & ASSOCIATES

76) Because of Defendants' violation of Chapter 521 of the Hawaii Revised Statutes, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

a. Economic–

   i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

   ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

   iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

   i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

   ii. Loss of use and enjoyment in their homes and community;

   iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

   iv. Loss of aesthetic and recreational satisfaction in their community.

30

77) As a proximate and legal result of Defendants' breach of contract, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## FOURTH CLAIM FOR RELIEF[15]
### (OMITTED)

## FIFTH CLAIM FOR RELIEF
### (Negligent Failure to Warn – Defendants)

78) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

79) Defendants have an obligation to provide safe and healthy housing for residents and a duty to warn Plaintiffs of risks.

80) Despite actual knowledge of the presence of pesticide-contaminated soils at MCBH and related health risks, however, Defendants provided no warning to Plaintiffs or their families and instead intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse

---

[15] Pursuant to the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 63], which dismissed Plaintiffs' Fourth Claim (Unfair and Deceptive Trade Practices) with prejudice in *Lake, et al. v. Ohana Military Communities, LLC, et al.*, 1:16-CV-00555 LEK-KJM, Plaintiffs do not replead this claim herein, but reserve all appellate rights.

SMITH|LAW
REVERE & ASSOCIATES

health outcomes without their knowledge and against their will by knowingly allowing exposure to contaminated soils and dust as explained above at MCBH.

81) As explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. Additionally:

a. At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

c. At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d. At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

SMITH|LAW
REVERE & ASSOCIATES

e. At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

82) Defendants' actions are particularly egregious because they communicated, solicited and bargained with Plaintiffs through licensed real estate agents who are, or should be aware, of the need to disclose all known unsafe and hazardous conditions at properties they market and sell.

83) This failure to warn includes but is not limited to Defendants' knowing violation of their Pesticide Soils Management Plan by failing to provide notification under the Plan, failure to maintain detailed maps identifying the location of pesticide-contaminated soils, failure to warn that fugitive dust potentially contained pesticide-contaminated soil, failure to disclose pesticide-contaminated landfills throughout MCBH beneath "new" homes.

84) Defendants have therefore breached their duty to warn military families at MCBH and Plaintiffs are entitled to all rights and remedies, which includes their reasonable attorneys' fees and costs.

85) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

SMITH|LAW
REVERE & ASSOCIATES

a. Economic–

    i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

    ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

    i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii. Loss of use and enjoyment in their homes and community;

    iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv. Loss of aesthetic and recreational satisfaction in their community.

86) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs and their families.

SMITH|LAW
REVERE & ASSOCIATES

87) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

88) As a proximate and legal result of Defendants' negligence, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SIXTH CLAIM FOR RELIEF
**(Negligent & Intentional Infliction of Emotional Distress - Defendants)**

89) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

90) As explained above, while living at MCBH, Plaintiffs and their families were routinely and continuously exposed to pesticide-contaminated soils, dust, and neighborhoods that impacted their quality of life at MCBH.

91) As explained above, while living at MCBH, Plaintiffs and their families routinely contacted dirt and soil at MCBH.

92) Plaintiffs have since learned that MCBH contained wide-spread pesticide contamination.

    a. Although Defendants' Pesticide Soil Management Plan mandated that "no visible dust" should occur because of the risk of substantial exposure, substantial fugitive dust occurred at MCBH throughout the demolition of old

housing and the construction of new housing that was personally experienced by Plaintiffs as described above.

b. Although Defendants told Plaintiffs it was safe to work and play in their yards, Defendants now state that pets and children not be allowed to play in the yard near the foundation of original homes…that are unmarked.

c. When residents have asked for maps and other information that is supposed to be available to confirm their homes are safe, however, Defendants have been neither willing nor able to make such information available.

93) Despite actual knowledge of pesticide-contaminated soils at MCBH, Defendants provided no warning to military families and intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in order to lease housing.

94) Defendants' intentional, negligent and/or reckless conduct, acts, and omissions have caused Plaintiffs' emotional distress, mental suffering, nervousness, and fear of exposure to harmful pesticides.

95) Knowingly and intentionally exposing Plaintiffs and their families to carcinogens and increased health risks without their knowledge is outrageous in any civilized community.

SMITH|LAW
REVERE & ASSOCIATES

96) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a. Economic–

      i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

      ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

      iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

   b. Non-economic–

      i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

      ii. Loss of use and enjoyment in their homes and community;

      iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

      iv. Loss of aesthetic and recreational satisfaction in their community.

SMITH|LAW
REVERE & ASSOCIATES

97) Plaintiffs are entitled to all rights and remedies, which include their reasonable attorneys' fees and costs.

98) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs and their families.

99) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

100) As a proximate and legal result of Defendants' acts and omissions, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.


## SEVENTH CLAIM FOR RELIEF
### (Fraud by Omission & Express Statement - Defendants)

101) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

102) Ohana MC expressly represents that the housing it provides is "safe and habitable" for military families within its leases to military families.

103) Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[16]

---

[16] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable.");

104) All statements and representations made by Forest City RM are equally on behalf of Ohana MC because such statements are made under the scope of Forest City RM's agency in managing residential housing at MCBH.

105) Forest City RM's Community Handbook is incorporated into all lease agreements and has been provided to *every* military family from approx. 2006 to the present leasing residential housing at MCBH with Ohana MC. The Community Handbook expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[17]

106) Despite these representations, Defendants intentionally and knowingly omitted telling Plaintiffs and their families that pesticide-contaminated soils had been *confirmed* at MCBH. Instead, the Community Handbook only states that chlordane "may" be found.

107) Despite these representations, Defendants intentionally and knowingly omitted telling Plaintiffs that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

---

*see also* ¶1 (Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner and to give an accept notices.")

[17] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

108) Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose Plaintiffs and their families to pesticide contamination in excess of Tier 1 EALs.

109) Despite their ongoing representations in the MCBH Community Handbook, Forest City RM, on behalf of itself and Ohana MC, admitted in Spring 2014 that children and pets should <u>not</u> be allowed to play in their yards and that families should <u>not</u> grow fruits or vegetables in their yards if near the foundation of the pre-existing housing, which directly contradicts the representations of the Community Handbook to Plaintiffs.

110) Additionally, as more fully explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

   a. At no time before entering leases at MCBH were any families told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

   b. At no time before entering leases at MCBH were any families told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

40

c. At no time before entering leases at MCBH were any families told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

d. At no time before entering leases at MCBH were families told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

e. At no time before entering leases at MCBH were any families told that Defendants had unilaterally decided to expose Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

111) Ohana FC and Forest City RM have therefore committed fraud by omission against military families by claiming they provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils pose increased health risks for military families.

112) Ohana FC and Forest City RM have also committed fraud by express statement by telling all military families in their leases that it is safe for families to work, play, and grow gardens in their yards when this was not true.

113) Forest City RM directly participated in fraud against military families because it has been aware that pesticide-contaminated soils were confirmed at MCBH, but

41

repeatedly represented within its Community Handbook that families can safely work and play in their yards as well as grow gardens despite knowledge to the contrary. Similarly, despite actual knowledge that pesticide-contaminated soils were confirmed at MCBH, Forest City RM only states in its Community Handbook that chlordane "may" be found.

114) Because it controls the Community Handbook, Forest City RM has repeatedly and specifically authorized express misrepresentations to be made to military families and is directly responsible for the content of its fraudulent representations to military families at MCBH. Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the representations of Forest City RM.

115) In reliance upon Defendants' failure to warn and express statements, Plaintiffs have been exposed to pesticide contaminated soils at MCBH and prevented from taking safety measures to protect themselves and their families.

116) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a. Economic–

SMITH|LAW
REVERE & ASSOCIATES

       i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

      ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

     iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

      i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

      ii. Loss of use and enjoyment in their homes and community;

     iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

     iv. Loss of aesthetic and recreational satisfaction in their community.

117) Defendants' fraudulent conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

118) Defendants' fraudulent acts and omissions therefore justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

Smith|Law
Revere & Associates

119) Because of Defendants' fraudulent acts and omissions, it has been necessary for Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

120) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## EIGHTH CLAIM FOR RELIEF
**(Negligent Misrepresentation by Omission & Express Statement- Defendants)**

121) Plaintiffs repeat and incorporate all factual allegations stated within their Complaint.

122) Per the terms of its residential lease with military families at MCBH, Ohana MC represents that it will provide safe and habitable housing for military families.

123) Similarly, Forest City RM is responsible for managing MCBH housing and for providing notification to residents under the lease on behalf of Ohana MC.[18] All statements and representations made by Forest City RM are therefore equally on behalf of Ohana MC to the extent such statements are made under the scope of Forest City RM's agency.

---

[18] *See, e.g.* Ohana MC Lease Agreement at 4, ¶12 ("Owner is responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable."); *see also* ¶1 (Forest City Residential Management, Inc., is authorized to manage the Premises on behalf of Owner and to give an accept notices.")

124) Forest City RM's Community Handbook, which is incorporated into all lease agreements by Ohana MC and has been provided to *every* military family from approx. 2006 to the present who has leased residential housing at MCBH, expressly states that "[f]amilies can safely work and play in their yards," and that plants and vegetables can be grown on-site for consumption.[19]

125) Despite these representations, Ohana MC and Forest City negligently failed to inform military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

126) Despite these representations, Ohana MC and Forest City negligently omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

127) Despite these representations, Ohana MC and Forest City now acknowledge that gardens should <u>not</u> be grown and children and pets should <u>not</u> be allowed to play in their yards near the foundation of the pre-existing housing.

128) Despite knowledge that pesticide contaminated soils had been *confirmed* at MCBH, Defendants' Community Handbook instead only states that chlordane "may" be found.

---

[19] *See, e.g.* Forest City Residential Community Handbook Marine Corp Neighborhoods, at 16 and 17.

Smith|Law
Revere & Associates

129) Additionally, as more fully explained above, Defendants failed to warn Plaintiffs of the existence, nature and extent of pesticide contamination at MCBH and exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will. For example:

   a. At no time before entering leases at MCBH were any Plaintiffs told about the presence of pesticide-contaminated soils or contaminated construction dust in residential neighborhoods at MCBH.

   b. At no time before entering leases at MCBH were any Plaintiffs told that Ohana MC was engaged in a community wide Pesticide Soil Management Plan to address widespread pesticide contamination at MCBH.

   c. At no time before entering leases at MCBH were any Plaintiffs told that Ohana MC was creating pesticide-contaminated landfills below "new" neighborhoods it was leasing to military families.

   d. At no time before entering leases at MCBH were Plaintiffs told that they should not work or play in their yards or take special precautions such as not growing gardens, keeping window's closed, or not allowing their families or pets to play in the dirt or come into contact with soil, dust, and dirt at MCBH.

   e. At no time before entering leases at MCBH were any Plaintiffs told that Defendants had unilaterally decided to expose Plaintiffs and their families to

increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

130) Defendants' claim that they would provide safe housing within their leases and that it is safe to work, play, and use their yards while omitting that pesticide-contaminated soils were confirmed at MCBH and that such soils pose increased health risks for military families are negligent misrepresentations to Plaintiffs.

131) Ohana FC and Forest City RM have jointly participated in, approved, and directed this tortious conduct and representations against military families.

132) Forest City RM drafts and controls the Community Handbook as well as controls and directs virtually all representations to military families. Although Forest City RM possessed knowledge that pesticide-contaminated soils had been confirmed at MCBH, Forest City RM's Community Handbook failed to disclose this fact and instead represented that families can safely work, play and use their yards. Forest City RM has therefore repeatedly participated in and authorized misrepresentations to military families and is directly responsible for its misrepresentations to military families at MCBH.

133) Similarly, by incorporation of the Community Handbook into its leases and by utilizing Forest City RM as its agent, Ohana MC is responsible for the conduct and representations of Forest City RM as well as its own representations within its lease agreements.

134) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

    a. Economic–

        i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

        ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

        iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

    b. Non-economic–

        i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

        ii. Loss of use and enjoyment in their homes and community;

        iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

48

> iv. Loss of aesthetic and recreational satisfaction in their community.

135) Defendants' conduct was willful, wanton, and/or grossly negligent of the foreseeable consequences to Plaintiffs.

136) Defendants' acts and omissions justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

137) Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.


## NINTH CLAIM FOR RELIEF[20]
## (OMITTED)


## TENTH CLAIM FOR RELIEF
### (Trespass)

138) Plaintiffs William and Keri Pye, Tremayne and Lela Graf, Tulsa and Benjamin Kirk, Cory and April Lentowski, and Nathan and Jerrica Malsam repeat and incorporate all factual allegations stated within their Complaint.[21]

---

[20] Pursuant to the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 63], which dismissed Plaintiffs' Ninth Claim (Unfair Competition) with prejudice in *Lake, et al. v. Ohana Military Communities, LLC, et al.*, 1:16-CV-00555 LEK-KJM, Plaintiffs do not replead this claim herein and reserve all appellate rights.

[21] Pursuant to the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 98], which dismissed *Lake* Plaintiffs' Nuisance Claim for plaintiffs who did not live at MCBH within two years of bringing their complaint, Plaintiffs limit this claim to families who lived at MCBH within two years of the complaint and reserve all appellate rights for other named Plaintiffs.

SMITH|LAW
REVERE & ASSOCIATES

139) As described above, during the relevant time period, Defendants' conduct repeatedly caused the release of dust into the surrounding MCBH community, which interfered with all Plaintiffs' ability to use and enjoy their homes and community.

140) Additionally, during the relevant time period, Defendants' conduct repeatedly caused the release of visible fugitive construction dust that was deposited in substantial amounts on, and in, Plaintiffs' real property, which interfered with Plaintiffs' ability to use and enjoy their homes.

141) This dust directly interfered with these Plaintiffs' exclusive possession of their property by requiring these Plaintiffs to constantly expend time and money on cleaning.

142) Defendants are liable for the trespass of its construction into the community and onto Plaintiffs' property.

143) Because of the invasion of dust onto their property, these Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

   a. Economic–

      i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

50

    ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

    iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

b. Non-economic–

    i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

    ii. Loss of use and enjoyment in their homes and community;

    iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

    iv. Loss of aesthetic and recreational satisfaction in their community.

144) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations and fugitive dust, Defendants failed to take steps to prevent the release of construction dust into the community nor did it provide any adequate and timely warning to Plaintiffs.

145) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

SMITH|LAW
REVERE & ASSOCIATES

146) As a proximate and legal result of Defendants conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## ELEVENTH CLAIM FOR RELIEF

### (Nuisance)

147) Plaintiffs William and Keri Pye, Tremayne and Lela Graf, Tulsa and Benjamin Kirk, Cory and April Lentowski, and Nathan and Jerrica Malsam repeat and incorporate all factual allegations stated within their Complaint.[22]

148) During the relevant time period, Defendants' conduct repeatedly caused the release of dust into: a) the MCBH community; b) individual real and/or personal property in possession of Plaintiffs, which interfered with Plaintiffs' ability to use and enjoy their homes.

149) As more fully described above, Defendants' repeated release of construction dust, soils, and dirt, resulted in harm, inconvenience, and unlawfully annoyed and disturbed the Plaintiffs' free use, possession, and enjoyment of their property.

---

[22] Pursuant to the Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [ECF 98], which dismissed *Lake* Plaintiffs' Nuisance Claim for plaintiffs who did not live at MCBH within two years of bringing their complaint, Plaintiffs limit this claim to families who lived at MCBH within two years of the complaint and reserve all appellate rights for other named Plaintiffs.

SMITH|LAW
REVERE & ASSOCIATES

150) Defendants' construction operations that resulted in the release of visible fugitive construction dust during the relevant time period constituted a nuisance to Plaintiffs.

151) Defendants' failure to carry out its Pesticide Soil Management Plan interfered with Plaintiffs' use and enjoyment of the MCBH community and homes.

152) The undisputed fact that Defendants did not disclose the existence of widespread pesticide contamination interfered with Plaintiffs' use and enjoyment of the MCBH community and homes.

153) Defendants are therefore liable for damages that are the legal and proximate result of the nuisance created by their conduct.

154) Because of Defendants' tortious conduct, Plaintiffs have sustained harm, expenses and other damages in an amount to be proven at trial, which include, but are not limited to:

    c. Economic–

        i. Overpayment for rent, real estate sales commissions, renter's insurance policies, property management and maintenance services, for failure to provide the MCBH home and community represented by Defendants;

  ii. Costs associated with cleaning and other supplies related to contaminated construction dust, dirt, and soils on their personal and/or real properties; and

  iii. Value of time spent in pursuit of excess cleaning and other chores related to addressing construction dust, soil, and dirt on their real and personal property.

 d. Non-economic–

  i. Annoyance and discomfort from the presence of contaminated construction dust, dirt, and soils at MCBH;

  ii. Loss of use and enjoyment in their homes and community;

  iii. Emotional distress related to increased health risks related to exposure to contaminated soils at MCBH; and

  iv. Loss of aesthetic and recreational satisfaction in their community.

155) Further, Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs. Indeed, despite knowledge of the hazards posed by its construction operations, Defendants failed to take steps to prevent the release of construction dust into the community and failed to provide any adequate and timely warning to Plaintiffs of widespread pesticide contamination at MCBH.

SMITH|LAW
REVERE & ASSOCIATES

156) Defendants' reckless conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

157) As a proximate and legal result of Defendants' conduct, Plaintiffs have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants and in favor of the Plaintiffs as follows:

1. General, special, treble, and consequential damages in an amount to be proven at trial;

2. Reasonable attorneys' fees and costs;

3. Disgorgement of profits due to Defendants' unjust enrichment;

4. Any prejudgment interest provided by statute;

5. Punitive damages for Defendants' wanton, reckless, and grossly negligent conduct;

6. For such other and further relief at law or equity as the Court may deem just and proper.

Dated: Kailua, Hawaii, this 23rd day of August 2018,

P. Kyle Smith
Terrance M. Revere
*Attorneys for Plaintiffs*

SMITH|LAW
REVERE & ASSOCIATES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| William and Keri Pye, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc., and DOE Defendants 1-10,<br><br>Defendants. | Civ. No.  1:17-CV-00114 LEK-KJM<br><br>**CERTIFICATE OF SERVICE**<br><br>JUDGE LESLIE E. KOBAYASHI<br><br>No Trial Date Set |

I hereby certify that, on the dates and by the method of service below, a true and correct copy of the foregoing First Amended Complaint was served on the following by CM/ECF:

COX FRICKE
Joachim P. Cox       jcox@cfhawaii.com
Randall Whattoff    rwhattoff@cfhawaii.com
Kamala S. Haake    khaake@cfhawaii.com

GOODSILL ANDERSON QUINN & STIFEL
Lisa Munger          lmunger@goodsill.com

DATED this 23rd day of Agust 2018.

SMITH|LAW
P. KYLE SMITH, ESQ.
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734

56